# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4684 | **DATE** | 6/25/2004 |
| **CASE TITLE** | G.A.S./WILSON LTD. vs. INSURANCE CO. OF N. AMERICA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE PLAINTIFF'S THIRD AMENDED COMPLAINT. Status hearing set for 7/6/04 at 10:00a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 2 8 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 21 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| TBK | courtroom deputy's initials | 2004 JUN 25 PM 2:32 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUN 2 8 2004

G.A.S./Wilson, Limited Partnership,    )
                                       )
          Plaintiff,                   )    Case No. 03C 4684
                                       )
     v.                                )    Judge Mark Filip    JUN 2 8 2004
                                       )
Insurance Company of North America,    )    Magistrate Judge Arlander Keys
                                       )
          Defendant.                   )

## MEMORANDUM OPINION DENYING DEFENDANT'S MOTION TO DISMISS THE PLAINTIFF'S THIRD AMENDED COMPLAINT

Before the Court is Defendant's Rule 12(b)(6) motion to dismiss the Plaintiff's third

amended complaint. As explained below, Defendant's motion to dismiss is denied.

## BACKGROUND

Plaintiff, G.A.S./Wilson, Limited Partnership ("Plaintiff" or "G.A.S."), is an Illinois

Limited Partnership. (D.E. 19 ¶ 1.[1]) It is comprised of two Illinois corporations (whose principal

places of business are both in Illinois) and a California corporation (whose principal place of

business is also in California). (*Id.* ¶¶ 1-4.) Defendant, Insurance Company of North America

("Defendant" or "INA"), is a Pennsylvania corporation with its principal place of business in

---

[1] The motion to dismiss *sub judice* was originally filed in relation to the Second
Amended Complaint. By order of March 18, 2004, this Court ordered the Plaintiff "to file an
amended complaint that avers the citizenship of each of its limited partners and clarifies the
jurisdictional basis . . . for this case to be heard in federal court." (D.E. 15.) In response to that
order, Plaintiff filed the Third Amended Complaint, which is identical to the Second Amended
Complaint except for the addition of appropriate jurisdictional averments. Citations in this
opinion are to the Third Amended Complaint ("Complaint") (D.E. 19).

2 1

Pennsylvania. (*Id.* ¶ 5.)

G.A.S. leased an aircraft to a Panamanian company ("lessee") on June 24, 1998, and that lease was scheduled to terminate on June 23, 2001. (*Id.* ¶¶ 6, 7.) As a result of a dispute between the lessee and its creditors, a Panamanian court ordered the attachment of the leased aircraft on January 24, 2001. (*Id.* ¶¶ 8, 9.) Following expiration of the lease on June 23, 2001, G.A.S. inspected the aircraft and noted that the aircraft did not meet Federal Aviation Administration standards for airworthiness because of allegedly poor maintenance by the lessee. (*Id.* ¶ 10.) In addition, the aircraft was not returned to G.A.S. when the lease terminated because of the attachment ordered by the Panamanian court. (*Id.* ¶ 11.)

On August 9, 2001, G.A.S. made a claim on the lessee's insurance policy as a beneficiary under it; however, the claim was denied for two reasons. (*Id.* ¶¶ 13, 15.) First, the claim was made outside the lessee's policy period. (*Id.* ¶ 15.) Second, the lessee's policy excluded indemnification for repairs arising from "wear and tear." (*Id.*) There is no indication that G.A.S. appealed that denial or has instituted litigation concerning it; at a minimum, that claim denial has not produced litigation in this Court.

At some point thereafter, G.A.S. made a claim against INA on its insurance policy covering the aircraft (policy number AVF011123). (*Id.* ¶ 20.) G.A.S. asserts (this is the subject of a dispute between the parties, as discussed later) that it was not entitled to make a claim under the INA policy until benefits were denied under the lessee's policy. (*Id.* ¶ 17.) G.A.S. further asserts that it fully complied with all the terms of the INA policy. (*Id.* ¶ 18.) Although G.A.S. does not specifically address this issue in its complaint, one of the terms of the INA contract is the policy condition that the insured may not institute any suit "on this policy or for the recovery

2

of any claim hereunder . . . unless commenced within twelve (12) months after the happening of the loss." (D.E. 19, Ex. A, ¶ 23.) This condition further provides that "where such time limitation [that is, the one-year-after-loss limitation] is prohibited by the law of the state . . . wherein this policy is issued, then and in that event, no suit or action under this policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such state." (*Id.*)

On June 24, 2002, INA denied G.A.S.'s claim for coverage. (D.E. 19 ¶ 21.) Although G.A.S. does not purport to quote the claim denial or attach a copy of the denial among the attachments to its complaint, G.A.S. avers that INA denied the claim for the following reasons:

1.    A judicial attachment does not constitute a "seizure" as the term is used in the subject policy.

2.    G.A.S. had not met the conditions of the "single interest - physical damage" coverage provided by the subject policy.

3.    The loss of use of the aircraft, if any, was specifically excluded under the terms of the subject policy.

4.    There was no indication that the damage at issue occurred during the policy period.

5.    Any damage other than those alleged as a result of the judicial attachment constituted "wear and tear" and also fell within exclusion "g" of the subject policy.

(*Id.* ¶ 23.) By the instant lawsuit, G.A.S. seeks a declaration of its rights under its insurance policy with INA, a declaration of bad faith claim practices by INA, compensatory and punitive damages, and attorney fees. (*Id.* at 6-7.)

INA has moved to dismiss the case. It contends that G.A.S. suffered its loss when the subject aircraft was seized on January 24, 2001, which thereby caused a loss of the use of the

aircraft. (D.E. 9 ¶ 5.) INA contends that as of January 24, 2001, there was potential coverage for the loss occasioned by the Panamanian government's order of attachment and seizure but that coverage was subject to the exclusions, conditions, and other terms of the policy. (*Id.* ¶¶ 7-9.) Among other arguments, INA asserts that G.A.S. did not comply, as it must, with all of the terms and conditions of the policy. INA argues that G.A.S. did not file a sworn proof of loss as required by the policy, that G.A.S. never gave INA timely notice of the loss as required by the policy, and that G.A.S. did not commence this suit within twelve months of the happening of the loss, as required by the policy. (*Id.* ¶¶ 10, 11.) More specifically, INA contends that G.A.S. failed to meet the policy's twelve month time limitation clause for filing suit and that this is a contractually required condition precedent to G.A.S.'s ability to sue. (*Id.* ¶ 12.) In this regard, INA highlights that G.A.S. filed this suit on May 5, 2003, which was two and a half years after the loss date as argued by INA. (*Id.*) In addition, INA asserts that G.A.S. never filed a proof of loss with INA as required by the policy. (*E.g.*, D.E. 20 at 2-3.) With respect to the notice issue, INA contends that the date of loss was January 24, 2001 and that G.A.S. gave untimely notice a year and a half later, on or about June 24, 2002. (D.E. 9 ¶ 12.) INA also asserts that any failure by the lessee to adequately maintain the aircraft was simple "wear and tear" or "mechanical, structural . . . breakdown or failure" for which coverage does not apply by the terms of the INA policy. (*Id.* ¶¶ 5, 6.)

## DISCUSSION

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In ruling on the motion, the Court accepts as true all well-pleaded facts

alleged in the amended complaint and draws all reasonable inferences from those facts in favor

the plaintiff. *See, e.g., Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999).

However, while the Court must give the pleadings a generous construction, the Court is not

required to accept legal conclusions alleged in the pleaded facts. *See, e.g., First Ins. Funding

Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002). Dismissal for failure to state a claim is

not appropriate unless "'it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief.'" *Lee v. City of Chicago*, 330 F.3d 456,

459 (7th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

The claims in this case are based on a contract of insurance between the parties. Under

Illinois law,[2] when interpreting an insurance agreement, the Court must give effect to the "true

intentions of the contracting parties." *First Ins. Funding Corp.*, 284 F.3d at 804 (citing *Fid. &

Cas. Co. v. Merridew*, 762 N.E.2d 570, 571 (Ill. 2001)). In doing so, a court must consider and

construe the agreement as a whole and give effect to the purpose of the entire contract. 284 F.3d

at 804 (citing *Maremont Corp. v. Cont'l Cas. Co.*, 760 N.E.2d 550, 554 (Ill. 2001)). The

---

[2] In this diversity case, the Court applies the choice of law rules of the State of Illinois to
determine the applicable substantive law. *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313
U.S. 487, 496 (1941). The parties have both briefed the pending motion on the premise that
Illinois substantive law will govern their rights and obligations under the INA contract. The
Seventh Circuit has stated that "[w]here the parties agree on the law that governs a dispute, and
there is at least a 'reasonable relation' between the dispute and the forum whose law has been
selected by the parties, 'we will forego an independent analysis of the choice-of-law issue and
apply the parties' choice.'" *Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000)
(quoting *Bird v. Centennial Ins. Co.*, 11 F.3d 228, 231 n.5 (1st Cir. 1993)); *see also
Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995) (teaching that "choice of law, not
being jurisdictional, is normally . . . waivable") (collecting cases). In this instance, there appears
to be a reasonable relation between the case and Illinois—G.A.S. is an Illinois limited
partnership, and its two principal partners are Illinois corporations whose principal places of
business are both in Illinois. Accordingly, the Court will follow the course charted in *Harter* and
analyze the case, as the parties have, under Illinois substantive law.

interpretation of an unambiguous contract poses a question of law. 284 F.3d at 804. Undefined and unambiguous terms are assigned their plain and ordinary meaning and ambiguity exists only if the insurance policy is susceptible to reasonable alternative interpretations. *Id.* at 804-5 (collecting Illinois authorities). Illinois law provides that a contract's meaning must be determined from the language used and a court cannot place a construction on the contract which is contrary to the plain meaning of the language. *See, e.g., Johnstowne Ctr. P'ship v. Chin*, 458 N.E.2d 480, 481 (Ill. 1983).

## I. THE DATE OF LOSS

The first issue in dispute between the parties regards when the loss occurred. This is significant to determining coverage because insurance policies only cover a specified period of time and many duties of the insured and insurer are defined by the date the loss occurred. INA contends that loss occurred on January 24, 2001, the date when the subject aircraft was seized by the Panamanian court.[3] G.A.S. proposes a loss date much later in time—as it must do, given that it did not file suit until some two and a half years after the plane was seized by the Panamanian court. Although G.A.S.'s theory appears to vacillate somewhat, G.A.S. asserts in its Complaint that "on June 24, 2002, [G.A.S.] suffered a loss pursuant to Policy No. AVF11123 as the Insurance Company of North America denied the claim for coverage," which seems to indicate that the insurable "loss" occurs under the INA policy when INA denies a claim. (D.E. 19 ¶ 21.) Perhaps in recognition of the implausibility of that position (that is, that the loss covered by an

---

[3] In this regard, INA claims that G.A.S. admits in its complaint that the loss date was the date of seizure because that date is the first noted in the complaint (D.E. 9 ¶¶ 2-4; *see also* D.E. 19 ¶ 12 (G.A.S. asserting that, "[t]o date, the aircraft continues to be seized making the loss to . . . [G.A.S.] ongoing").)

insurance policy occurs only when a claim under that policy is denied), G.A.S., in its response to the motion to dismiss, appears alternatively to contend that the loss perhaps occurred a bit earlier, when G.A.S.'s claim against the lessee's insurer was denied. (*See* D.E. 12 at 4 (G.A.S. asserting that the INA policy's "use of this term [loss] in relation to both the time for filing suit and the requirement for filing a proof of loss does not make it clear that loss means the date on which the physical loss of property occurred, rather than the date on which the primary coverage is denied and Plaintiff actually sustained a loss").)

The Court will not hold G.A.S. to the position it appears to take in the Complaint and instead will analyze both alternatives that G.A.S. proposes. As explained below, the INA policy might be read to mean that loss did not occur until G.A.S.'s lease for the airplane (and receipt of payments thereunder) ended on June 24, 2001; however, the INA policy cannot be fairly construed to extend the date of insurable loss forward to the time when a claim was denied by the lessee's insurer or, even further forward still, to the time when G.A.S.'s claim for coverage was denied by INA.

The Court turns, as it must under Illinois law, to the language of the insurance policy. The insuring agreement for "Coverage B-All Risk of Physical Damage" agrees to "Pay for any loss of or damage to the aircraft; also disappearance if the aircraft is missing and not reported for sixty days after commencing flight." (D.E. 19, Ex. A, at 11.) Although "loss" is not specifically defined in the policy, the INA contract, when read as a whole, makes clear that the time of "loss" does not mean when INA denies a claim by G.A.S., or the time when another insurance company (such as the lessee's) denies a claim that G.A.S. submits on alternative insurance coverage.

In this regard, it is important to keep in mind that a contract must be read as a whole

when determining the meaning of a disputed term. *See, e.g., Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 628 N.E.2d 1165, 1168 (Ill. App. Ct. 1994). When one does so for the contract in question, it is clear that under the INA policy "loss" occurs before a decision by INA on a G.A.S. claim and also before different insurance companies adjudicate other or related claims concerning the aircraft. For example, Paragraph 18 of the policy, which is titled "Insured's [G.A.S.'s] Duties When Loss Occurs,"[4] specifies that

> *When loss occurs* the Insured shall: . . .
>
> (c)  file proof of loss with the Company within sixty days after the occurrence of loss . . . in the form of a sworn statement of the Insured setting forth the interest of the insured and of all others in the property affected, . . . the actual cash value at the time of loss, *and the description and amount of all other insurance covering such property.*

(D.E. 19, Ex. A, ¶ 18 (emphasis added).) As indicated, the contract specifies that the filing of the "proof of loss" must occur "within sixty days of the occurrence of loss" (*id.*); the contract also specifies that "payment for loss may not be required . . . until sixty days after proof of loss is filed. . . ." (*Id.*, Ex. A, ¶ 23.) These provisions make clear that loss occurs (as one would naturally expect) before INA denies a claim made by G.A.S., because the written, sworn proof of loss must be filed well before any claims decision is due under the policy.[5] Similarly, the requirement that the sworn proof of loss (which must be filed within sixty days of the loss) must

---

[4] This paragraph relates to G.A.S.'s duties when loss occurs under "Coverage B" of the policy, which is the coverage at issue in this suit. (D.E. 19 ¶ 19.)

[5] The denial of a claim under an insurance policy cannot be the source of the loss the policy is intended to insure against. If this were possible, every denial of a claim would create a new claim with a new date of loss. The thing insured against in the policy in question is "loss of or physical damage to the aircraft," (D.E. 19, Ex. A, at 11), not loss resulting from denial of a claim made under that policy.

include a description of "all other insurance covering the property" makes clear that loss occurs within the meaning of the INA policy before the resolution of whatever other (potentially protracted) disputes may eventuate concerning possible other coverage. Other portions of the contract further confirm that, when the contract is read as a whole, "loss" under this contract, contrary to G.A.S.'s various suggestions, does not mean the point in time when INA denies a claim under this contract or when any other potential insurer in play (such as the lessee's insurer) denies a claim on the aircraft. (*See, e.g.,* D.E. 19, Ex. A, at 15 (Exclusion h of policy) (discussing "loss" related to "capture" and "seizure" of aircraft relating to, *inter alia*, "war," "invasion," and "revolution," all of which would occur before any claims decision was made); *id.,* Ex. A, at 15 (term specifying that the policy covers various types of risks only for "losses which happen during the policy period," which period could naturally terminate before either INA or some other insurer issued a claims decision).)

The Court's rejection of the time of loss as the time that INA denies a claim by G.A.S., or as the time that some other insurer denies a claim (such as the lessee's insurer), also garners support from other areas of the law. For example, as G.A.S. concedes, "[i]t is true that under Illinois law, the date used for determining the date of the [loss] for insurance policy limitations purposes is the date on which the physical loss of the property occurred." (D.E. 12 at 4 (citing *Harvey Fruit Mkt., Inc. v. Hartford Ins. Co. of Illinois,* 691 N.E.2d 71, 72 (Ill. App. Ct. 1998)).) *Harvey Fruit* states that, "[i]n Illinois, the date utilized for determining the date of loss is the date on which the actual physical loss of property occurred." *Id.,* 691 N.E.2d at 72.

In addition, one can readily suggest good reasons for requiring that, when an insured party may have suffered an insurable loss that might also be covered by other insurers, the insured

9

party must give its own insurer notice of all known potential policies and layers of coverage that might be in play. Or—to be more precise—one can readily suggest good reasons for merely allowing sophisticated commercial actors such as the parties in this case to contractually agree to such a notice arrangement. The burden on the insured party to provide such notice is low, and, at the same time, the practical benefits of such an approach are quite real. These benefits will inure to insureds, to insurance companies, and to the judicial system as a whole—as such notice will tend to facilitate dialogue among the various carriers that can lead to the consensual resolution of at least some insurance disputes more cheaply and quickly than through in-court litigation. *See generally Omnitrus Merging Corp.*, 628 N.E.2d at 1170 (suggesting that 94% of all lawsuits are negotiated and settled amicably before a judicial resolution is obtained); *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979) ("It is a well settled principle that the law generally encourages settlements") (citation omitted); *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129 (2d Cir. 2001) ("[I]t is axiomatic that the law encourages settlement of disputes.") (collecting cases and citing, *inter alia, Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts . . . .")).

Notwithstanding the reasons why the law might want to encourage commercial actors such as aircraft lessors and insurance companies to contract in a manner that promotes early disclosure of relevant coverage and loss information, or the recognition by G.A.S. that the Court's interpretation of loss is consistent with the thrust of Illinois law in this area, it bears mention that the Court need not and does not purport to make any broad pronouncements of law here. All the Court need resolve is whether, for the particular contract at issue, G.A.S.'s suggested interpretations for when loss occurs under the INA policy are reasonable enough to

raise a disputed question of fact—or are at least reasonable enough to implicate legal doctrines teaching that ambiguous terms are typically construed against the insurer. And, as to that inquiry, the Court finds that, given the structure and language of the contract at issue, G.A.S.'s proposals are not reasonable or permissible ones.

That is not to say that INA's suggested loss date—January 24, 2001, the date that the aircraft was seized by order of the Panamanian courts—is the only possible loss date as a matter of law. The policy covers "loss of or damage to the aircraft." (D.E. 19, Ex. A, at 11.) The date that there was a loss of or damage to the aircraft must be determined by the facts of the case.

In that regard, the aircraft was seized on January 24, 2001, which prevented the lessee and G.A.S. from using the aircraft or receiving the benefit of the property. However, G.A.S. may or may not have sustained an economic loss on that date depending on the terms and enforcement of the lease agreement. If the lessee had paid rent through June 23, 2001, then G.A.S. could plausibly argue and offer evidence that it did not sustain a loss of the aircraft until the lease expired. In this regard, G.A.S. might contend that it did not have a right to possession (as long as rent was paid) until June 23, 2001; therefore, it did not sustain a loss until that time. Viewing all facts alleged in the complaint as true, and drawing reasonable inferences from those facts in G.A.S.'s favor, G.A.S. may be able to prove that it did not suffer a loss of the aircraft until June 24, 2001 when the lease expired.

## II. THE TIME LIMITATION CLAUSE

The next material issue raised by the motion to dismiss is the enforcement of the time limitation clause in the INA insurance policy. INA contends that G.A.S. has not complied with the time limitations clause in the policy and that this suit should be barred as a result. (*See, e.g.*,

11

D.E. 20 at 2-3.) In this regard, Paragraph 23 of the policy states:

Action Against Company-Coverage B:

.... No suit or action on this policy or for the recovery of any claim hereunder shall be sustainable in any court of law or equity, unless the Insured shall have fully complied with all the foregoing requirements, nor unless commenced within twelve (12) months after the happening of the loss provided that where such limitation of time is prohibited by the laws of the state or province wherein the policy is issued, then and in that event, no suit or action under this policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such state or province.

(D.E. 19, Ex. A, ¶ 23.) It is well settled that Illinois law recognizes policy limitations periods as valid contractual provisions in an insurance contract. *See, e.g., Affiliated FM Ins. Co. v. Bd. of Educ. of the City of Chicago*, 23 F.3d 1261, 1264 (7th Cir. 1994) (collecting numerous Illinois cases and stating that "[i]t has long been settled that it is appropriate for suit limitations [periods] to be contained in insurance policies"); *Koclanakis v. Merrimack Mut. Fire Ins.*, 899 F.2d 673, 674 (7th Cir. 1990) (collecting cases and holding to similar effect). Moreover, the twelve-month limitations period involved in this case seems to be a standard term—both *Affiliated FM Ins. Co.*, 23 F.3d at 1264, and *Koclanakis*, 899 F.2d at 675, for example, involved the same provision.

When analyzing whether G.A.S. timely instituted the instant suit, however, G.A.S. correctly points out that Illinois Insurance Code ("the Code") § 143.1 impacts the enforcement of the policy's time limitations provision. Section 143.1 of the Code states:

Periods of limitation tolled. Whenever any policy or contract for insurance, except life, accident and health, fidelity and surety, and ocean marine policies, contains a provision limiting the period within which the insured may bring suit, *the running of the period is tolled from the date proof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part.*

(*Id.* (emphasis added).) As the Seventh Circuit has instructed, this provision of Illinois law is to

12

be applied by its terms, and an insured must therefore submit a proof of loss "in whatever form is required by the policy" to gain the benefit of the tolling provision. Thus, in *Koclanakis*, the Seventh Circuit instructed that "[t]o fall within the ambit of the statute, the proof of loss filed by the insurer must be in the 'form . . . required by the policy,'" and "the statute requires the insured to do more than merely present equivalent information to that requested in the insurance policy." 899 F.2d at 675 (quoting § 143.1 and citing *Vole v. Atlanta Int'l Ins. Co.*, 526 N.E.2d 653, 655 (Ill. App. Ct. 1988)). *Koclanakis* held that "because . . . [the insured] never submitted a proof of loss in the required form, he cannot find solace in the statutory tolling provision." *Id.* at 676. Subsequent Illinois authority has confirmed the approach taken by the Seventh Circuit in *Koclanakis. See Vala v. Pac. Ins. Co.*, 695 N.E.2d 581, 583 (Ill. App. 1998) ("Filing of other information with an insurance company does not start tolling the running of a policy's one-year limitations period if sworn proof of loss is required by the policy.") (citing *Vole*, 526 N.E.2d at 655); *Harvey Fruit*, 691 N.E.2d at 73 (dismissing suit as untimely and rejecting argument that insured's provision of notice was sufficient to start tolling under § 143.1 where such notice was not in form of sworn proof of loss as required by policy).

The Court must determine if G.A.S. has pleaded sufficient allegations of fact to show that they commenced this action within twelve months of the "happening of the loss," as required by the policy. If the suit was not filed within twelve months, G.A.S. must show that the limitation period was tolled as provided by § 143.1 of the Code or that INA waived its right to enforce this policy provision.

The policy requires that the suit be filed twelve months from the "happening of the loss." Taking all well-pleaded facts as true and making all reasonable inferences in the light most

13

favorable to G.A.S., the policy would require that the suit be filed by June 24, 2002—or one year from the termination of the aircraft lease on June 23, 2001.[6] G.A.S. filed suit on May 5, 2003, so the Court must consider whether waiver or the Code allows G.A.S. to proceed with the case.

As mentioned, INA vigorously asserts that G.A.S. never filed any proof of loss as required by the INA contract. G.A.S. did not explicitly address this issue in its papers—to be entirely fair, however, INA raised the issue most squarely when replying to certain arguments G.A.S. made in its response. Although this factual ambiguity precludes a ruling on the issue at this stage of the litigation, a few points nonetheless appear reasonably clear. First, in its Complaint, G.A.S. alleges that its claim against the lessee's policy with another insurer was not made until August 9, 2001. Given that G.A.S. took the position that no "loss" was implicated under the INA policy until after the claim against the other insurer was denied, one can reasonably conclude, taking everything G.A.S. alleges as true, that G.A.S. did not file any proof of loss with INA until at least some time after August 9, 2001. As a consequence, the period from June 24, 2001 until August 9, 2001 (or some six weeks) has run from G.A.S.'s one-year limitations period.

G.A.S. nonetheless asserts in its Complaint that it "made a claim" under the INA policy "[p]rior to June 24, 2002," and that G.A.S. also "fully complied" with the terms of the INA policy. (D.E. 19 ¶¶ 18, 20.) Reading these terms generously in G.A.S.'s favor, as is appropriate at this stage of the litigation, the Court understands G.A.S. to be contending that it complied with

---

[6] Many cases have been prompted by disputes about whether the last day of a limitations period should be counted as within that limitations period or not. The Court does not purport to resolve any potential disputes about whether the last day of the period was June 24, 2002, as opposed to, for example, June 23, 2002. If and when that issue becomes material, the parties can appropriately brief it.

all of the terms and conditions of the policy (including the requirement that a sworn proof of loss be filed within 60 days of loss). If that is the case, and if the proof of loss was filed "in whatever form is required" by the INA policy, 215 ILCS 5/143.1, then there could have been an extended tolling that occurred during the time from August 9, 2001 until the G.A.S. claim with INA was denied on June 24, 2002. This factual issue will need to be resolved.

In this regard, it bears mention that G.A.S. suggests that the tolling provision in § 143.1 of the Code "applies to both the time between when the . . . [lessee's] carrier received . . . [G.A.S.'s] claim and rendered the decision to deny coverage, as well as the time between when the claim was made on . . . [INA] and the final decision to deny coverage was made." (D.E. 12 at 2.) G.A.S. acknowledges that it has no precedent in support of this view (it says, to be fair, that there is "no case law which is directly on point" (*id.*)), but G.A.S. contends that "[s]uch a construction of the statute is consistent with the plain meaning of section 143.1 of the Insurance Code." (*Id.* at 3.)

The Court respectfully disagrees. Section 143.1 of the Code states, in clear terms, that tolling occurs "from the date the proof of loss is filed, in whatever form is required by the policy." This clear language of the statute shows that G.A.S.'s proposed construction is flawed in two significant ways. First, tolling occurs from the date the "proof of loss" is submitted, not from the time a "claim" is made. In the insurance context, a "proof of loss" is typically (as was the case here) a sworn written statement concerning the subject of the policy, not simply a generic "claim," which may refer to less formal demands on or notice to the insurer concerning a

15

claimed loss.[7]  Second, tolling only occurs where the proof of loss is filed "in whatever form is required by the policy." 215 ILCS 5/143.1.  Under the INA policy in question, G.A.S. was required to file a sworn written proof of loss "with the Company within sixty days after the occurrence of loss." (D.E. 19, Ex. A, ¶ 18(c)).  As one would expect, "the Company" is INA, not some other insurer.  (*Id.*, Ex. A, at 11.)  Moreover, the proof of loss that was required to be filed with INA was to include "the description and amount of all other insurance covering such property." (*Id.*, Ex. A, ¶ 18(c).)  This language confirms that the proof of loss was expected to be filed with INA prior to the resolution of the issue of whether any other insurance policy also might cover the claimed loss in whole or in part.

G.A.S. also alleges in its response to the motion to dismiss that INA waived its right to deny the claim for failure to timely file the claim or failure to provide a proof of loss by considering G.A.S.'s "claim without rejecting it for lack of timeliness and/or the failure to file a written notice of the proof of loss." (D.E. 12 at 4.)  Although any waiver questions need not be resolved now, there are meaningful issues concerning G.A.S.'s argument.  First, although G.A.S. did not attach the INA claim denial among its exhibits, G.A.S. avers that one of the bases upon which INA denied coverage was that G.A.S. had not met the conditions of the "single interest - physical damage" coverage provided by the subject policy.  (D.E. 19 ¶ 23(b).)  The INA policy states that "[n]o action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of the policy," including presumably the

---

[7] Anyone familiar with the problem of insurance fraud, and the many criminal and civil cases it has engendered, can appreciate why it might be prudent to require a claimant to file a sworn statement concerning the fact and value of a claimed loss.  In addition, even as to the honest claimant, the requirement of a written proof of loss can help to reduce ambiguities that might arise from more informal claims and notification procedures such as telephone calls.

various terms concerning notice, proof of loss, and time limitations periods. (*Id.* ¶ 12.) The INA

policy also specifies various duties of the insured triggered by a loss, including the insured's duty

to file a proof of loss within sixty days that describes all other insurance covering the property.

(*Id.* ¶ 18(c).) And the INA policy further provides that payment for loss under Coverage B (the

coverage at issue in this case) shall not be required unless, "as a condition precedent thereto, the

Insured shall have fully complied with all the terms of this policy." (*Id.* ¶ 23.) As a result, one

could certainly argue that an INA denial for the asserted reason that G.A.S., *inter alia*, had "not

met the conditions for the . . . coverage provided by the subject policy" (D.E. 19 ¶ 23(b)) was not

a waiver concerning terms and conditions about requisite proof of loss and timeliness of notice.

Second, precedent may teach that even if INA waived its right to deny a claim for failure to

timely file a proof of loss or make a claim, that does not impact on INA's right to enforce the

time limitations period in the policy and Code. *See Vole*, 526 N.E.2d at 655; *see also*

*Koclanakis*, 899 F.3d at 675-76 (teaching that an insurer can invoke its rights under § 143.1 of

the Code, even if the insured has informally complied with other policy requirements).

In sum, the issue of whether this suit is barred by the time limitations clause in the

insurance policy rests on whether G.A.S. can establish it is entitled to the benefit of the tolling

provision in the Code. There also may be relevant factual issues concerning waiver. Taking all

well pleaded facts as true and making all reasonable inferences in the light most favorable to

G.A.S., it may be able to show facts to support that it is entitled to the benefit of the Code. As a

result, dismissal is inappropriate.

### III. OTHER POLICY PROVISIONS

Finally, INA objects to coverage under the policy based on various exclusions of the policy. These issues appear to implicate factual questions that will require further development before they can be fairly resolved. For example, there may be issues concerning the timing of the seizure (*see* D.E. 9 at 2; D.E. 12 at 9), and there may be issues concerning the nature of alleged damage to the plane with respect to whether such harm is excludable "wear and tear." (D.E. 9 at 5; D.E. 12 at 10.) Those issues also can be resolved as the case moves forward.

### CONCLUSION

For the forgoing reasons, the Defendants' Rule 12(b)(6) motion to dismiss is denied.

So Ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Dated: JUN 2 5 2004